**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| MARIA JOYCE MACON,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC, GREEN DOT BANK;<br><br>Defendants. | Civil Action No. 2:26-cv-12695<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

Maria Joyce Macon ("Plaintiff") brings this action on an individual basis, against Equifax Information Services, LLC ("Defendant Equifax" or "Equifax"); Experian Information Solutions, Inc. ("Experian"); Trans Union LLC ("Trans Union") (collectively, the "Credit Bureau Defendants"); and Green Dot Bank ("Defendant Green Dot" or "Green Dot") (all defendants collectively, "Defendants"), for actual, statutory, and punitive damages and costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et. seq*., arising out of the mixing Plaintiff's credit file with that of Plaintiff's twin sister, a distinct consumer.

## PARTIES

1. Maria Joyce Macon ("Plaintiff") is a natural person residing in Saginaw, Michigan, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

2. Defendant Equifax Information Services, LLC ("Defendant Equifax" or "Equifax") is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of Michigan, including within this District.

3. Defendant Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") is a consumer reporting agency that maintains its principal place of business at 475 Anton Boulevard, Costa Mesa, CA 92626.

4. Defendant Trans Union LLC ("Defendant Trans Union" or "Trans Union is a consumer reporting agency that maintains its principal place of business at 555 West Adams Street, Chicago, IL 60661.

5. The Credit Bureau Defendants are a "consumer reporting agencies" as defined in 15 U.S.C. § 1681a(f). The Credit Bureau Defendants regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

6. The information the Credit Bureau Defendants collect, maintain, and

sell includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans. The Credit Bureau Defendants also collect consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

7. The Credit Bureau Defendants collect and maintain such information about consumers, whether consumers like it or not. Consumers do not have a choice as to whether Equifax collects and maintains information about them. Not only that, but consumers cannot remove information that the Credit Bureau Defendants collect and maintain about them from the Credit Bureau Defendants databases. Further, the Credit Bureau Defendants sells that information about consumers for its unilateral profit, none of which is shared with the Plaintiff, who is the subject of the very data sold.

8. Defendant Green Dot Bank ("Defendant Green Dot" or "Green Dot") is a bank with a principal place of business located at 1675 North Freedom Boulevard (200 West), Building 1, Provo, Utah 84604, United States, and is authorized to do business in the State of Michigan, including within this District.

9. Green Dot is a "Furnisher" as defined in 12 CFR 1022.41. Green Dot regularly furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report. A data furnisher, such as

Green Dot is an entity that reports information about consumers to consumer reporting agencies ("CRAs"), which may include credit bureaus, tenant screening companies, check verification services, and medical information services, etc. Like CRAs and data users, data furnishers have legal obligations and rules that must be upheld & followed pursuant to 15 U.S.C. § 1681s-2b of the FCRA.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### Plaintiff Applies for a Credit Card with Frankenmuth Credit Union ("Frankenmuth")

12. In or around October 2025, Plaintiff applied for a credit card with Frankenmuth Credit Union ("Frankenmuth").

13. On or about October 8, 2025, Frankenmuth informed Plaintiff that her application had been denied. Plaintiff was informed that the denial was due to collection accounts appearing in her consumer report.

14. Concerned by the denial, Plaintiff requested a copy of her consumer report from TransUnion, the consumer reporting agency used by Frankenmuth for evaluating her credit application.

15. Upon reviewing the TransUnion consumer report dated November 16, 2025, Plaintiff was shocked to discover that her credit file had been mixed with information belonging to another individual, her twin sister.

16. Specifically, the TransUnion report contained multiple tradelines that did not belong to Plaintiff, as well as personal identifying information, including addresses and employment history.

17. The numerous inaccurate tradelines attributed to Plaintiff included no less than two erroneous debt collection accounts which Plaintiff does not owe, in addition to a Chime-Stride account.

18. The inaccurate address attributed to Plaintiff included the 1231 Warren Avenue Saginaw, Michigan 48601 address.

19. The inaccurate employment history information included the previous employer information of the Saginaw ISD.

20. Even more alarming, Plaintiff discovered that TransUnion was reporting two different Social Security numbers within her consumer file, further demonstrating that information from two separate consumers had been commingled into a single consumer's credit file.

21. As a direct result of this mixed-file reporting, Plaintiff was left with a consumer report that did not accurately reflect her own credit history.

22. Section 1681e(b) of the FCRA requires a consumer reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Accuracy under this standard is measured against the specific consumer who is the subject of the report, not merely against whether the reported information happens to be true of someone.

23. By issuing a consumer report about Plaintiff that contained the account and personal identifying information of a distinct consumer, TransUnion violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of the information concerning Plaintiff, and by furnishing a report that was erroneous and materially misleading as to her.

**Plaintiff Continues to Be Denied Credit Because of the Inaccurate Reporting**

24. Also, on or about October 11, 2025, Plaintiff applied for a Fortiva Credit Card. However, Plaintiff's application was denied.

25. The denial letter identified too many delinquent or derogatory accounts, unpaid collection accounts, too few bankcards with high credit limits, and lack real-estate secured loan information as reasons for the denial. It also identified Experian as the consumer reporting agency whose information was obtained.

26. Upon information and belief, Experian furnished a consumer report about Plaintiff to Fortiva that reported delinquent and collection accounts belonging to Plaintiff's twin sister as though those accounts belonged to Plaintiff.

27. That information was not accurate concerning the individual about whom the report related, that is, Plaintiff, because Plaintiff was not the consumer to whom those accounts pertained.

28. By furnishing a report to Fortiva containing collection and delinquency information belonging to a distinct consumer as though it were Plaintiff's own, Experian violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of the information concerning Plaintiff.

29. On or about December 7, 2025, Plaintiff submitted another application for credit through NetCredit. Plaintiff's application was again denied. The denial notice stated that Plaintiff did not score a sufficient number of points to qualify for approval and identified TransUnion as one of the consumer reporting agencies that provided information used in evaluating her application.

30. The December 7, 2025, denial notice identified unpaid collections as a key factor adversely affecting Plaintiff's credit score.

31. Those unpaid collections did not belong to Plaintiff. They were the Jefferson Capital Systems collection accounts for the Verizon Wireless and Fortiva Credit Card debts belonging to Plaintiff's twin sister, the same mixed-file accounts

at issue throughout this Complaint.

32. TransUnion therefore violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of the information concerning Plaintiff.

33. Plaintiff also applied for credit through Lendly on or about December 15, 2025. Plaintiff's application was likewise denied, on or about December 15, 2025, after Lendly determined that she did not satisfy its lending criteria.

34. Specifically, upon information and belief, Lendly denied Plaintiff's credit application due to the erroneous and misleading mixed file products disseminated by the Credit Bureau Defendants, with the Credit Bureau Defendants thereby violating 15 U.S.C. § 1681e(b).

35. The damaging denials continued into 2026. Plaintiff submitted additional applications for credit with multiple financial institutions, including Wells Fargo, FNBO, Capital One, and Republic Bank & Trust Company. Each application was denied.

36. Wells Fargo denied Plaintiff's application for a credit card on or about March 12, 2026, because of Experian's credit report disseminated which contained the personal identifiers and severely derogatory credit account histories of her twin sister, thereby falsely representing her credit worthiness, and thus violating 15 U.S.C. § 1681e(b).

37. FNBO denied Plaintiff's credit application on April 21, 2026, due to Experian's credit report disseminated which communicated the personal identifiers and derogatory credit account histories of her twin sister, thereby falsely representing her credit worthiness, and thus violating 15 U.S.C. § 1681e(b).

38. Capital One denied Plaintiff's credit application on April 26, 2026, stating that the denial was due to "excessive obligations in relation to income." This was due to the Credit Bureau Defendants' publication of her twin sisters identifiers and severely derogatory account history, which had no relation to her. The Credit Bureau Defendants therefore violated 15 U.S.C. § 1681e(b).

39. From 2025 through 2026, Plaintiff repeatedly suffered adverse credit decisions as a result of inaccurate information appearing in her consumer reports. Despite her efforts to obtain credit, she was consistently denied opportunities that she otherwise believed she qualified for.

40. During this time, Plaintiff did not understand why her consumer reports contained accounts and identifying information that were not hers or how to correct the inaccuracies. As a result, she believed there was little she could do to remedy the situation and was forced to endure the ongoing consequences of the inaccurate reporting until she eventually learned that her consumer file had been mixed with that of her identical twin sister.

**Plaintiff's Mixed Credit File as of July 2026**

41. The several denials prompted Plaintiff to obtain her credit reports from Credit Bureau Defendants and investigate the matter.

42. On July 2, 2026, Plaintiff viewed a copy of her credit file from Defendants Equifax and Experian.

43. Upon reviewing the contents of the Equifax and Experian credit file, Plaintiff was confused by the appearance of several pieces of information that did not belong to Plaintiff at all.

44. Specifically, Defendant was reporting the following accounts which did not belong to Plaintiff:

(a) GREEN DOT BANK
Account Number: Ending in 6593
Date Opened: 04/21/2021

(b) CHIME/STRIDE BANK NA
Account Number: Ending in 9676
Date Opened: 09/11/2020

("False Accounts")

45. In fact, Plaintiff contacted Green Dot Bank and Chime directly, and each searched its records using Plaintiff's Social Security number. Neither institution located any credit account under Plaintiff's identifiers. The False Accounts therefore do not belong to Plaintiff, and the furnishers' own records confirm as much.

46. Defendants Experian and Equifax were reporting the following

addresses which did not belong to Plaintiff:

(a) 628 S 21ST ST SAGINAW MI, 48601-1535;

(b) 1325 CHERRY ST SAGINAW MI, 48601-2124;

(c) 2661 GEMINI ST SAGINAW MI, 48601-7008.

(“False addresses”)

47. By reporting the aforementioned credit related contents and other personal information in the credit file presumably about Plaintiff, despite the fact that the information does not belong to Plaintiff, Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained within Plaintiff’s credit files and consumer reports, in violation of 15 U.S.C. § 1681e(b).

**Plaintiff’s July 2026 Dispute to Defendants Equifax and Experian**

48. On July 8, 2026, Plaintiff disputed the inaccurate information appearing in her credit report with Equifax through its online consumer portal, specifically identifying the Green Dot Account, account number ending in 6593, and the addresses that do not belong to her, and requesting deletion of that information.

49. Plaintiff did not merely assert that the Green Dot Account was not hers. She explained to Equifax that the account belongs to her twin sister; that she and her sister share the same date of birth; that their Social Security numbers are identical but for the final digit, hers ending in 4 and her sister's ending in 3; and that Plaintiff

has never held an account with Green Dot Bank. Plaintiff further transmitted copies of her Social Security card and her state-issued driver's license, permitting Equifax to confirm by simple comparison that the disputed account was associated with a different Social Security number belonging to a different consumer.

50. On July 9, 2026, Plaintiff disputed the inaccurate information appearing in her credit report with Experian by telephone, specifically identifying the Green Dot Account and the addresses that do not belong to her, and requesting deletion of that information.

51. Rather than commencing a reinvestigation, on or about July 10, 2026, Experian emailed Plaintiff demanding that she verify her own current mailing address before it would proceed, requiring a government-issued identification card displaying that address together with a current utility, bank, or insurance statement.

52. On or about July 13, 2026, Plaintiff promptly complied, uploading through Experian's online portal her driver's license, a current utility statement bearing her name and current address, and a copy of Experian's own letter, together with a written statement identifying herself by full legal name, date of birth, and Social Security number; identifying her twin sister by name; explaining that the sisters share a date of birth and that their Social Security numbers differ only in the final digit; stating that she has never had an account with Green Dot Bank; and asking Experian to remove the account and correct her file.

53. The inaccuracy Plaintiff identified was therefore neither subtle nor dependent on information uniquely within her possession. Before completing any reinvestigation, each Defendant held Plaintiff's identity documents, her true Social Security number, the identity of the other consumer, and a plain explanation of how the two files had been confused. Neither Defendant needed to look beyond what Plaintiff gave it to appreciate that the disputed information did not belong to her.

**Defendant Equifax's Unreasonable Dispute Reinvestigation**

54. Upon information and belief, Defendant Equifax received Plaintiff's dispute and request that the inaccurate information be removed from her credit file.

55. Defendant Equifax sent Green Dot an ACDV pursuant to Plaintiff's July 2026 dispute to Defendant Equifax.

56. Defendant Green Dot received Defendant Equifax's ACDV and failed to adequately investigate Plaintiff's dispute.

57. On or about July 14, 2026, Plaintiff received the results of Equifax's reinvestigation through her online Equifax account.

58. Equifax verified the disputed GREEN DOT BANK account ending in 6593 as accurate.

59. Specifically, Equifax stated: "You indicated that this item belonged to another individual with the same or similar name. Our investigation concluded that the item belongs to you."

60. Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff.

61. Defendant Equifax failed to reinvestigate Plaintiff's July 2026 dispute and failed to remove the disputed information.

62. Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

63. Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation of Plaintiff's March 2024 dispute, or any reinvestigation whatsoever, to determine whether the disputed information was inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

64. Defendant Equifax further violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed Green Dot Account from Plaintiff's credit file. Upon information and belief, Green Dot did not and could not verify that the account belonged to Plaintiff, because the account is associated with a Social Security number that is not Plaintiff's — a fact Equifax could have confirmed from the Social Security card Plaintiff supplied with her dispute. The disputed information was therefore inaccurate and, at minimum, could not be verified, and Equifax was required to delete it from Plaintiff's file. Instead, Equifax retained the account and

continued to publish it to third parties.

**Defendant Experian's Unreasonable Dispute Reinvestigation**

65. Upon information and belief, Defendant Experian received Plaintiff's dispute and request that the inaccurate information be removed from her credit file.

66. Defendant Experian sent Defendant Green Dot an ACDV pursuant to Plaintiff's July 2026 dispute to Defendant Experian.

67. Defendant Green Dot received Defendant Experian's ACDV and failed to adequately investigate Plaintiff's dispute.

68. On or about July 17, 2026, Plaintiff received Experian's reinvestigation results and obtained an updated copy of her Experian consumer report.

69. Although Experian removed the disputed addresses that did not belong to Plaintiff, it verified the disputed Green Dot Bank account as accurate and continued reporting it on Plaintiff's consumer report.

70. On or about July 22, 2026, Plaintiff obtained another updated Experian consumer report. The inaccurate addresses previously disputed by Plaintiff had been removed, and the only addresses remaining on the report were Plaintiff's correct addresses.

71. Nevertheless, Experian continued to report the disputed GREEN DOT BANK account, despite Plaintiff's dispute.

72. Defendant Experian failed to adequately review all of the information

provided to it by Plaintiff.

73. Despite having received Plaintiff's driver's license, a current utility statement bearing her name and address, and a written statement identifying her twin sister by name and explaining that the sisters share a date of birth and Social Security numbers differing only in the final digit, Defendant Experian continued to represent that the Green Dot Account was accurate and belonged to Plaintiff. No reasonable reinvestigation could have reached that conclusion on the information before Experian, which needed only to compare the Social Security number associated with the disputed account against the Social Security number Plaintiff had documented as her own.

74. Defendant Experian failed to reinvestigate Plaintiff's July 2026 dispute and failed to remove the disputed information.

75. Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

76. Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation of Plaintiff's July 2026 dispute, or any reinvestigation whatsoever, to determine whether the disputed information was inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

77. Defendant Experian further violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed Green Dot Account from Plaintiff's file. The disputed information was inaccurate and, at minimum, could not be verified as belonging to Plaintiff, and Experian was therefore required to delete it. Instead, Experian retained the account, modified its status from "Account charged off" to "Paid, Closed," and continued to publish it to third parties.

**Defendant Green Dot's Unreasonable Dispute Investigation July 2026**

78. Upon information and belief, Defendant Green Dot failed to adequately review all of the information provided to it by Plaintiff.

79. Upon information and belief, Defendant Green Dot verified the False Account as accurate in response to Equifax's and Experian's ACDVs.

80. Any reasonable investigation would have confirmed that the Green Dot Account belonged not to Plaintiff but to her twin sister, a separate and distinct consumer with a different Social Security number, a different address history, and a different name. Each of those discrepancies was apparent from Green Dot's own account records, which were within its custody, possession, and control. Green Dot nonetheless disregarded these obvious discrepancies, verified the account as accurate in response to the ACDV, and failed to modify, delete, or permanently block the reporting of the tradeline, in violation of 15 U.S.C. § 1681s-2(b)(1)(E).

81. Defendant Green Dot violated 15 U.S.C. § 1681s-2b by failing to

conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed information did not belong to Plaintiff.

## PLAINTIFF'S DAMAGES

82. As a result of the "mixed file," the Credit bureau Defendants made it practically impossible for Plaintiff to obtain credit.

83. Throughout 2025 and 2026, Plaintiff made numerous good-faith efforts to obtain consumer credit. Rather than being evaluated based upon her own credit history, however, Plaintiff was repeatedly denied credit because her consumer reports contained information belonging to her identical twin sister.

84. As alleged herein, Plaintiff was denied credit by Frankenmuth Credit Union, Fortiva, NetCredit, Lendly/CCBank, Wells Fargo, FNBO, Capital One, and Republic Bank & Trust Company (serviced by NetCredit), among others. These repeated adverse actions were based, in whole or in part, on inaccurate derogatory information and collection accounts appearing in Plaintiff's consumer reports that did not belong to her.

85. For years, Plaintiff did not understand why her consumer reports contained accounts and personal identifying information that were not hers or how to correct the errors. Because she believed there was little she could do to remedy the situation, Plaintiff endured the consequences of the inaccurate reporting while

repeatedly losing valuable credit opportunities.

86. The repeated reporting of information belonging to Plaintiff's identical twin sister caused Plaintiff substantial frustration, embarrassment, anxiety, and emotional distress. Each additional credit denial reinforced Plaintiff's belief that she would continue to be unfairly judged based on another person's credit history and that she would be unable to obtain credit despite her own creditworthiness.

87. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered actual damages, including but not limited to repeated credit denials, the loss of credit opportunities, damage to her reputation and creditworthiness, out-of-pocket expenses, time spent attempting to correct the inaccuracies, inconvenience, frustration, anxiety, humiliation, and emotional distress.

88. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

89. At all times pertinent hereto, Defendants’ conduct, as well as that of its respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

90. Defendants are aware of the shortcomings of their respective

procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, Defendants' violations of the FCRA are willful.

91. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damages including but not limited to, the loss of her right to keep her private financial information confidential; the loss of her right to information about who was viewing her private financial information and how her private financial information was improperly implicated in the credit applications of another; damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

92. Defendants Experian and Equifax are each aware that their credit reporting systems can and do result in the mixing of consumer credit files, commonly known as the "mixed file" problem. The matching algorithms and database rules employed by Experian and Equifax improperly associate and merge credit information belonging to different individuals, leading to inaccurate credit reports many times each year. These errors not only misrepresent consumers' financial

histories but also expose personal and financial information to unauthorized third parties, creating risks of identity theft, privacy violations, and unjust credit denials. Despite knowledge of these effects, the algorithms and procedures of Experian and Equifax continue to allow and cause consumers' files to be inappropriately merged, interfering with consumers' ability to access credit, employment, housing, and insurance.

93. Defendants Experian and Equifax have each long been aware of the mixed file issue, as evidenced by federal enforcement actions and litigation spanning decades, including lawsuits brought by the Federal Trade Commission, state Attorneys General, and many private consumers. Each has previously entered into agreements or consent decrees mandating corrective action, and each has been penalized with punitive damages awards in private actions. Yet mixed files persist.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (First Claim for Relief Against Defendants Experian, Equifax, Trans Union)

94. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

95. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the “maximum possible accuracy” of consumer

reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 .S.C. §1681e(b) (emphasis added).

96. On multiple occasions, Defendants Equifax, Trans Union, Experian each prepared patently false consumer reports concerning Plaintiff.

97. Defendants Equifax, Trans Union, Experian each mixed another consumer's personal and credit account information into Plaintiff's credit file, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

98. Defendants Equifax, Trans Union, Experian each continued to prepare and publish such reports after receiving Plaintiff's July 2026 dispute, her identifying documents, and her written explanation of the source of the error.

99. Defendants Equifax, Trans Union, Experian each violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning Plaintiff.

100. As a result of the conduct, action, and inaction of Defendants Equifax, Trans Union, Experian, Plaintiff suffered damages including but not limited to, the loss of her right to keep her private financial information confidential; the loss of her right to information about who was viewing her private financial information and

how her private financial information was improperly implicated in the credit applications of another; damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

101. The conduct, actions, and inactions of Defendants Equifax, Trans Union, Experian were willful, rendering each liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendants Equifax, Trans Union, and Experian were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

102. Plaintiff is entitled to recover attorneys' fees and costs from Defendants Equifax, Trans Union, and Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
## Failure to Perform a Reasonable Reinvestigation
## (Second Claim for Relief Against Defendants Experian and Equifax)

103. Plaintiff re-alleges and incorporates by reference the allegations set

forth in preceding paragraphs as if fully stated herein.

104. The FCRA mandates that Defendant Equifax conduct a reasonable reinvestigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The FCRA imposes a 30-day time limit for the completion of such an investigation. *Id*.

105. The FCRA provides that if Defendant Equifax conducts its reinvestigation of disputed information and confirms that the information is, in fact, inaccurate or it is unable to otherwise verify the accuracy of the disputed information, it is required to delete the item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

106. Plaintiff initiated disputes with Defendants Equifax and Experian, disputed inaccurate information reporting in her credit file, and requested that each Defendant correct and/or delete the inaccurate, misleading, and highly damaging information belonging to an unrelated consumer.

107. Defendants Equifax and Experian each conducted virtually no investigation of Plaintiff's dispute, or such investigation was so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

108. Plaintiff expended resources in the form of time, money, and effort to dispute the inaccurate information with Defendants Equifax and Experian, to no

avail.

109. Defendants Equifax and Experian each violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which it received notice of Plaintiff's dispute; and by failing to maintain reasonable procedures with which to filter and verify information in Plaintiff's credit files.

110. As a result of the conduct, action, and inaction of Defendants Equifax and Experian, Plaintiff suffered damages including but not limited to, the loss of her right to keep her private financial information confidential; the loss of her right to information about who was viewing her private financial information and how her private financial information was improperly implicated in the credit applications of another; damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into

Plaintiff's credit file.

111. The conduct, actions, and inactions of Defendants Equifax and Experian were willful, rendering each liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendants Equifax and Experian were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

112. Plaintiff is entitled to recover attorneys' fees and costs from Defendants Equifax and Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681s-2b**
**Failure to Conduct an Investigation of the Disputed Information and Review of all Relevant Information Provided by the Consumer**
**(First Claim for Relief Against Defendant Green Dot)**

113. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

114. Defendant Green Dot received notice of Plaintiff's dispute from Defendants Equifax and Experian pursuant to 15 U.S.C. § 1681i(a)(2), triggering its duties under 15 U.S.C. § 1681s-2(b).

115. Defendant Green Dot refused to remove information that belonged to another consumer — namely, the Green Dot Account ending in 6593, which belongs to Plaintiff's twin sister and not to Plaintiff.

116. Defendant Green Dot violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute(s), or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Defendants Equifax and Experian; and by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Defendants Equifax and Experian.

117. As a result of Defendant Green Dot's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

118. Defendant Green Dot's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an

amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant Green Dot was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

119. Plaintiff is entitled to recover attorneys' fees and costs from Defendant Green Dot in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court enter a judgment awarding Plaintiff actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs, and awarding Plaintiff such other and further relief as the Court may deem appropriate and proper.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: August 4, 2026

By: */s/Meir Rubinov*
Meir Rubinov, NY Bar # 6077887
CONSUMER ATTORNEYS
68-29 Main Street
Flushing NY 11367
T: 718-640-8123
F: (718) 247-8020
E: mrubinov@consumerattorneys.com

*Attorneys for Plaintiff,*
*Maria Joyce Macon*